UPCHURCH, Chief Judge.
Appellant Robert G. Murrell, an attorney, appeals two orders entered against him for direct criminal contempt. The question on appeal is whether Murrell’s use of leading questions constitutes sufficient reason for finding him in contempt of court.
The record on appeal is limited to that portion of the trial where the particular questions were asked.[1] Appellee’s brief does not contest the sufficiency of the record but argues that the relevant provisions of the transcript were included in the record on appeal. The contempt proceedings arose on the third day of a nine day jury trial involving a seven count complaint brought by Murrell’s client for assault and battery, wrongful imprisonment and malicious prosecution.
During the direct examination of his client, Murrell asked a series of conclusion-ary questions concerning whether the client consented to the physical actions of the defendant. The court warned Murrell about using leading questions several times and stated that the next time would be unpleasant. Three questions after this warning, Murrell asked, “[wjere you confined in the store against your will?” The court removed the jury, charged Murrell with contempt and asked him if he wanted to say anything in his defense. Murrell replied that he had no intent to ask a leading question. The court fined him $25.00 and stated “I think that is the lowest fine I have imposed in a long time for asking leading questions.” Later that afternoon Murrell was questioning his client when he asked, “[wjere you deprived of your freedom by reason of the actions of the defendant?” Opposing counsel objected to the question as being leading and the court again found Murrell guilty of direct criminal contempt and imposed a $50.00 fine. When the court allowed Murrell to defend his actions, Murrell replied: “I don’t understand that was a leading question.” After the trial, the court entered two written orders of contempt from which Murrell appeals.
Murrell contends that the court improperly found him in contempt because the questions were not leading and, even if leading, they were inadvertently asked and therefore he did not have the requisite intent necessary for direct criminal contempt.
Criminal contempt is covered by Florida Rule of Criminal Procedure 3.830. In State ex rel. Garlovsky v. Eastmoore, 393 So.2d 567 (Fla. 5th DCA 1981), this court held that a defense attorney’s willful disregard of a court’s prior ruling constituted direct criminal contempt. In Wells v. State, 471 So.2d 620 (Fla. 5th DCA), appeal dism., 478 So.2d 54 (Fla.1985), this court held that a defense attorney could be held in contempt for disregarding the trial court’s order to limit closing argument to twenty minutes. This court concluded that “[n]o one is justified in disregarding court orders merely because he believes them incorrect.” Id.
We suspect that what constitutes a leading question causes lawyers (new and old) and judges much consternation and confusion. Leading questions are not often analyzed in appellate opinions because they seldom, if ever, are the basis for error on appeal. An objection may be made to a question as leading because it is, in fact, leading or because objecting counsel is attempting to disrupt the smooth flow of testimony. Interrogating counsel usually rephrases his question, doesn’t belabor the *37 point and proceeds. Whether the judge ruled correctly is usually left in the dust and no one has learned much of anything.
A leading question is sometimes defined as a question which suggests the answer. Black’s Law Dictionary 800 (5th Ed. 1979) defines a leading question as one which instructs the witness how to answer or puts words in his mouth to be echoed back.
Section 90.612(3)(a), Florida Statutes (1985) provides that a witness may not be asked a leading question, i.e., one that suggests the answer, unless a rule of court or the interest of justice requires. The questions here that the trial judge considered contemptuous are not easily categorized under these definitions; however, the record before us does not reflect that Mur-rell acted in a willful or a deliberate manner. See Litus v. McGregor, 381 So.2d 757 (Fla. 5th DCA 1980). Although a contempt judgment is clothed with a presumption of correctness, Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977), we do not conclude that Murrell’s conduct reflects “some willful act or omission calculated to hinder the orderly function of the court.” Sewell v. State, 443 So.2d 164 (Fla. 1st DCA 1983).
While we reverse the judgment, we must observe that for the price of $75.00 Murrell apparently learned how to clearly recognize a leading question because the trial continued for six more days without his again being cited by the trial court. To acquire that skill so quickly at such a small cost is a bargain of which we are envious.
REVERSED.
DAUKSCH and COWART, JJ., concur.

. The questions which earlier in the trial led to this action were not included.